UNITED STATES of America,

v.

Frank MANCINO, Defendant.

United States District Court
S. D. New York.
Jan. 13, 1960.

S. Hazard Gillespie, U. S. Atty. for the Southern Dist. of New York, New York City (Samuel Sheres, Asst. U. S. Atty., New York City, of counsel), for Government.

Joseph Panzer, New York City, for defendant.

DAWSON, District Judge.

This case was tried by the Court without a jury, defendant having waived trial by jury. The prosecution was based upon a two count indictment returned by the Grand Jury for the Southern District of New York, filed December 15, 1959.

The first count of the indictment charged that on or about September 22, 1958 "in the Southern District of New York," the defendant Frank Mancino unlawfully, willfully and knowingly did receive, possess, conceal and facilitate the transportation and concealment of a narcotic drug, to wit, 86 grains of heroin hydrochloride, in violation of § 173 and § 174 of Title 21 of the U.S.C.A.

The second count of the indictment charged that on the 1st day of September, 1958, and continuously thereafter, up to and including the date of the indictment, "in the Southern District of New York," Frank Mancino, the defendant, and David Schumacher, named as a co-conspirator but not as a defendant, and others to the Grand Jury unknown, unlawfully, willfully and knowingly combined, conspired and confederated and agreed together and with each other to violate § 173 and § 174 of Title 21 of the U.S.C.A.

The only overt act charged in the indictment is that in pursuance of the conspiracy and in order to effect the objects thereof, on or about the 22nd day of September 1958, David Schumacher, named as a co-conspirator but not as a defendant, did, in the Southern District of New York, have in his possession 86 grains of heroin hydrochloride.

The Court finds the following facts:

On September 15, 1598 the defendant Mancino left his residence at 44 Marcy Avenue in Brooklyn, New York, and went to the Orientale Bar at 40 Marcy Avenue, Brooklyn, at about 8:00 p. m. At about 9:00 p. m. on that evening the alleged co-conspirator, David Schumacher, entered the Orientale Bar and had a conversation with the defendant Mancino. The defendant then returned to his residence and a few minutes later came back to the Orientale Bar. The defendant Mancino appeared to give something to Schumacher.

On September 22, 1958, the defendant was at the Orientale Bar at about 8:00 p. m. At 9:00 p. m. Schumacher entered the bar and had a conversation with the defendant. Schumacher gave some money to the defendant. The defendant then went to his home at 44 Marcy Avenue and in a few minutes returned to the bar and gave Schumacher a small brown paper bag, the contents of which could not be seen by the agents observing them. A few minutes later Schumacher left the bar. He was followed down the street by the agents to Bridge Plaza where he took a taxicab across the bridge to Nor-folk and Delancey Streets in Manhattan, where the cab stopped. The agents, who were following in a government car, got out. When Schumacher saw them he threw two glassine envelopes into the street which were retrieved by the agents and received in evidence and which contained a white powder stipulated to have been heroin. The two Narcotics Agents entered the taxicab in which Schumacher had been riding, interrogated him and searched him. He said his name was Weinberg. There was found in his left trouser pocket a brown paper package similar to the one the agents had seen delivered to him by Mancino. Inside this brown paper bag were two glassine envelopes containing a white powder which it has been stipulated was heroin. In the entire period between the time when Schumacher left the Orientale Bar and when he was apprehended at Norfolk and Delancey Streets the agents had had him under observation. He had not spoken with anybody; he had not met anybody. As far as they observed he had not transferred anything from one pocket to another, although, of course, while he was in the taxicab he might have been able to do that without it being possible for the agents to observe him do it.

The question is this: Was there sufficient proof to establish beyond a reasonable doubt that the brown paper package which was passed from Mancino to Schumacher contained the envelopes of heroin which were later found in a brown paper package in Schumacher's pocket when he was apprehended?

The Court concludes that there was sufficient proof to establish beyond a reasonable doubt that the brown paper package which passed from the defendant Mancino to Schumacher contained the envelopes of heroin which were later found in the brown paper bag found in Schumacher's pocket when he was apprehended.

However, another matter must be considered in connection with this case. The indictment was filed in the Southern District of New York. Certainly so far as the first count of the indictment is con-

cerned there is no proof that the defendant, in the Southern District of New York, did unlawfully, willfully and knowingly possess, conceal or facilitate the transportation and concealment of a narcotic drug. All of the transactions concerning the defendant Mancino were proved to have taken place in Brooklyn, in the Eastern District of New York.

■ Likewise, so far as the second count of the indictment is concerned, there is no proof that any conspiracy took place in the Southern District of New York, or that any acts in pursuance of a conspiracy took place in the Southern District of New York. The only evidence adduced in connection with the conspiracy was evidence relating to the substantive crime alleged in the first count of the indictment. There was no proof from which any inference could be drawn that such crime was part of a conspiracy to transport narcotics from the Eastern District of New York to the Southern District of New York. As far as the evidence would indicate, the transaction was completed when Mancino delivered the heroin to Schumacher. What Schumacher did thereafter was not connected with any conspiracy to transport narcotics, so far as Mancino was concerned. There is no proof that Mancino knew that the heroin was to be taken outside of the Eastern District of New York. A single purchase alone is not sufficient to prove that the purchaser is a participator in a conspiracy to violate the narcotics laws. See United States v. Aviles, 2 Cir., 1960, 274 F.2d 179.

There was no proof that there was an offense started in the Eastern District of New York and completed in this district and, therefore, § 3237 of Title 18 of the U.S.C. is not applicable to the venue for this prosecution.

The crime, if any, was committed in its entirety in the Eastern District of New York.

Rule 18 of the Rules of Criminal Procedure, 18 U.S.C., provides that

"Except as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed. * * * "

■ There appears to be no statute or rule which permits the prosecution of this case to be had in any district other than that in which the crime was committed. Proving proper venue is part of the Government's case without which there can be no conviction. United States v. Bryson, D.C.N.D.Cal.1954, 16 F.R.D. 431. Whatever crime was committed by the defendant Mancino, there was no evidence that the offense was committed in the Southern District of New York. Under the circumstances this Court would have no jurisdiction of the case. Post v. United States, 1894, 161 U.S. 583, 16 S. Ct. 611, 40 L.Ed. 816.

At the conclusion of the case a motion was made for a verdict of acquittal. It is the conclusion of the Court that the evidence adduced by the Government did not establish that any offense or crime was committed within the Southern District of New York. There was evidence that a crime was committed in the Eastern District of New York but it is the conclusion of the Court that this Court, sitting in the Southern District of New York, has no jurisdiction to try such offense or to render a verdict of guilty therein. Under the circumstances the motion for a judgment of acquittal is granted for lack of jurisdiction.

So ordered.